**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LISA TRACY, on behalf of KAYLA M. EATON,

                Plaintiff,

    v.                                      No. 02-CV-91 (TJM/DRH)

JO ANNE B. BARNHART, Commissioner of Social Security,

                Defendant.

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| OLINSKY & DiMARTINO<br>Attorney for Plaintiff<br>Historical First National Bank<br>186 West First Street<br>Oswego, New York 13126 | HOWARD D. OLINSKY, ESQ. |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br>    Northern District of New York<br>Attorney for Defendant<br>100 South Clinton Street<br>Syracuse, New York 13261-7198 | WILLIAM H. PEASE, ESQ.<br>Assistant United States Attorney |

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff Lisa Tracy, on behalf of Kayla Eaton ("Eaton"), brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by defendant Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act. Eaton contends that the decision should be reversed or, in the alternative, remanded for

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

further proceedings. Docket No. 7. Plaintiff moves for a finding of disability and the Commissioner cross-moves for judgment on the pleadings. Docket Nos. 7, 10.

For the reasons which follow, it is recommended that the Commissioner's decision be remanded for further proceedings.

## I. Procedural History

On March 28, 2000, Tracy, Eaton's mother, protectively filed an application for Supplemental Security Income ("SSI") benefits, claiming disability due to learning disabilities, physical limitations from a rare seizure disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), and emotional and behavioral problems. T. 86, 91.[2] The application was denied initially and also on reconsideration. T. 61, 66. Eaton then filed a timely request for an administrative hearing, which was held on June 12, 2001. T. 21-57. On July 24, 2001, ALJ Medicis found that Eaton was not disabled and thus not eligible for SSI benefits. T. 18. On December 6, 2001, the Appeals Council denied Eaton's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 5-6. This action followed.

## II. Contentions

Eaton contends that the ALJ erred when he (1) found that Eaton's impairments did not meet or medically equal a listed impairment, (2) found that Eaton did not have an impairment or combination of impairments functionally equivalent to a listed impairment, and (3) did not seek an updated medical opinion of a medical expert as to whether Eaton's impairments

---

[2] "T." followed by a number refers to the administrative transcript filed by the Commissioner. Docket No. 6.

were medically equivalent to a listed impairment. The Commissioner contends that there was substantial evidence to support the ALJ's determination that Eaton was not disabled.

### III.  Facts

The facts contained in Eaton's brief under the heading "Statement of Facts" (Docket No. 7 at 2-8) are adopted and are not disputed by the Commissioner except for conclusions drawn therein. Def. Mem. of Law (Docket No. 10) at 3.

### IV.  Standard of Review

#### A. Disability Criteria

To be considered disabled, a child plaintiff seeking benefits must establish that he or she (1) is not engaged in substantial gainful activity, (2) has a medically determinable severe impairment, and (3) meets a listed impairment, medically equals the requirements of a listed impairment, or has a functional equivalent of a listed impairment. 20 C.F.R. § 416.924 (2000); Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004). There is no dispute that Eaton had not engaged in substantial gainful activity and had a medically determined severe impairment. Def. Mem. of Law at 8; T. 17-18.

#### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A. Substantial Evidence

#### 1.  Listing of Impairments

Plaintiff contends that Eaton met the requirements for an impairment under 20 C.F.R. Pt. 404. Subpt. P, App. 1, §§ 112.05(D) & 112.11 and, thus, the ALJ's determination must be reversed.  The Commissioner contends that Eaton's medical evidence fails to satisfy the conditions required by §§ 112.05(D) and 112.11.

Under § 112.05(D), a claimant is disabled if he or she has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional or significant limitation of function." Here, Eaton had a verbal IQ of 73 and contends that because IQ tests have a five point margin of error, a score of 68 should be used to evaluate whether she is disabled under § 112.05(D). However, the Third Circuit has rejected this view, concluding "that if we were to read an error range of five points into the regulation, it would violate the plain language of the regulation, which requires '[a] valid verbal, performance, or full scale IQ of 60 through 70.'" Burns v. Barnhart, 312 F.3d 113, 125 (3d Cir. 2002) (citation omitted). Accordingly, there was substantial evidence that Eaton did not meet the requirements of the listed impairment. It is recommended that the Commissioner's determination on this ground be affirmed.

Section 112.11 addresses ADHD. Under § 112.11, a claimant's required level of severity is met when the requirements in both A and B are satisfied:

> A. Medically documented findings of all three of the following:
>    (1) marked inattention; and
>    (2) marked impulsiveness; and
>    (3) marked hyperactivity; AND
> B. For children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of § 112.02.[3]

Thus, the first step is to determine whether there is substantial evidence to support a finding of marked inattention, impulsiveness, and hyperactivity. The ALJ concluded that Eaton's

---

[3] Section 112.02(B)(2) requires a showing of at least two of the following: (a) marked impairment in age-appropriate cognitive/communicative function; (b) marked impairment in age appropriate social functioning; (c) marked impairment in age-appropriate personal functioning; (d) marked difficulties in maintaining concentration, persistence, or pace. § 112.02(B)(2)(a)-(d).

5

ADHD was "severe" within the meaning of the Regulations. T. 14. However, in a single sentence, the ALJ concluded that Eaton's "impairment (or impairments) does not meet or medically equal the criteria of any of the listed impairments of Appendix 1, Subpart P, Regulations No. 4." T. 15. The ALJ did not indicate what evidence, or lack of evidence, was relied upon to make this determination, nor did he explain the rationale behind the conclusion. Further, the Commissioner offers only two instances from the record to support the conclusion that Eaton does not have marked inattention, impulsiveness, and hyperactivity.

Here, school and medical records indicate that there is considerable evidence to support Eaton's contention that she suffers from marked inattention, impulsiveness, and hyperactivity. Eaton's records consistently indicate that she has difficulty attending, has a very short attention span, and needs constant monitoring. T. 129, 138, 191, 210, 346. Eaton is also described as being "highly impulsive" and hyperactive. T. 210, 213. Further, an ADHD diagnosis alone may constitute substantial evidence of marked inattention and hyperactivity. Taylor v. Barnhart, 333 F. Supp. 2d 846, 854 (E.D. Mo. 2004) ("the ADHD diagnosis alone reflects a medically documented finding of marked inattention, marked hyperactivity, or both"). However, even assuming that Eaton can satisfy the first prong of the ADHD test, she still must demonstrate two of the appropriate age-group criteria in paragraph B2 of § 112.02.

Here, the ALJ again fails to explain his rationale for concluding that Eaton's ADHD "does not meet or medically equal the criteria of . . . Appendix 1, Subpart P. Regulations No. 4." T. 15. The ALJ did not address any of the appropriate age-group criteria listed in paragraph B2 of § 112.02. However, there is substantial evidence to support Eaton's contention that she

6

has marked limitation in concentration, persistence, and pace.  The ALJ relied on the Childhood Disability Evaluation Form completed by Dr. Mata which concluded that Eaton had a marked limitation in this area.  T. 16, 344.  Further, the Commissioner does not contest Eaton's contention that she has marked limitations in concentration, persistence, and pace.  See Def. Mem. of Law at 12.

Eaton also contends that she has a marked limitation in age appropriate social functioning. Eaton's defiant behavior has been described as "age inappropriate."  T. 355.  There are numerous instances in the record describing Eaton's temper tantrums and inability to control her anger.  T. 337, 347, 353, 355.  Eaton also has some difficulty connecting with others and has not developed adequate social skills that enable her to do this.  T. 353.  Linda McCully, Eaton's special education teacher, stated that "[Eaton] is often in her own world and does not think about what she says or when she says it.  She is disruptive in class . . . [and] tends to be bossy when playing with peers."  T. 134.  Thus, there is considerable evidence in her school and medical records to support Eaton's contention of marked limitation in age appropriate social functioning.[4]

"'An ALJ's failure to acknowledge relevant evidence or explain its implicit rejection is plain error.'"  Morgan on Behalf of Morgan v. Chater, 913 F. Supp. 184, 189 (W.D.N.Y. 1996) (quoting Rivera v. Sullivan, 771 F. Supp. 1339, 1354 (S.D.N.Y. 1991)).  Here, the ALJ failed to take into account relevant evidence that supports Eaton's contention that her ADHD meets

---

[4] Although there was substantial evidence to support the ALJ's conclusion that Eaton did not have a marked limitation in interacting and relating with others, see subsection V(3)(c) infra, that conclusion and its rationale cannot be used to support the ALJ's finding with regard to Eaton's claim for disability under § 112.11. See subsection (V)(A)(2) infra.

or is equal to the listing requirement.  See Twyne v. Barnhart, No. 01 Civ. 2264 LMM), 2003 WL 22299198, at *14 (S.D.N.Y. Oct. 7, 2003) (holding that the ALJ erred in failing to discuss evidence that could have provided a basis for a different conclusion).  Further, the ALJ offered no explanation for his decision besides the one-sentence denial of Eaton's claim of impairment.  See Morgan on Behalf of Morgan, 913 F. Supp. at 189 (finding that a one-sentence denial of claimant's disability claim was not sufficient, especially in light of contrary evidence).

Therefore, it is recommended that the case be remanded for the ALJ to further develop the record regarding Eaton's alleged impairment under § 112.11.

### 2.  Medical Equivalence

Plaintiff contends that the ALJ erred by not seeking an updated opinion of a medical expert as to whether Eaton's impairments are medically equivalent to a listed impairment. The Commissioner contends that the ALJ's determination was proper.

An impairment is medically equal to a listed impairment "if the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 416.926 (2001). "Medical equivalence can be found in two ways:

> (1)(i) If you have an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but--
> (A) You do not exhibit one or more of the medical findings specified in the particular listing, or
> (B) You exhibit all of the medical findings, but one or more of the findings is not as severe as specified in the listing;
> (ii) We will nevertheless find that your impairment is medically equivalent to that listing if you have other medical findings related to your impairment that are at least of equal medical significance.
> (2) If you have an impairment that is not described in the Listing of Impairments in appendix 1, or you have a combination of impairments, no one of which

> meets or is medically equivalent to a listing, we will compare your medical findings with those for closely analogous listed impairments. If the medical findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

20 C.F.R. § 416.926(a). The determination of whether an impairment is medically equivalent must be based on medical evidence, including clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b).

Here, Dr. Mata, a state agency psychologist, completed a Childhood Disability Evaluation Form on May 17, 2000, roughly fourteen months before the ALJ's ruling. T. 342-45. Dr. Mata concluded that Eaton did not meet or medically equal a listed impairment. Id. The decision was affirmed by Dr. Nobel, another state agency psychologist. T. 342. Eaton contends that additional medical evidence after the May 17, 2000 exam required an updated medical opinion regarding Eaton's alleged impairments. Eaton cites nearly 130 additional pages in the record that Dr. Mata did not have the opportunity to review while preparing his medical opinion.

An ALJ must obtain an updated medical opinion from a medical expert when "additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at * 3-4 (S.S.A. July 2, 1996). Although the ALJ indicated that SSR 96-6p was considered in determining the weight of the medical opinions, he failed to state whether, in his opinion, the new medical evidence offered by Eaton may have changed the conclusions of Dr. Mata's May 17, 2000 medical opinion. See Field v. Barnhart, No. 05 Civ. 100, 2006 WL 549305, at *3 (D. Me. Mar. 6, 2006) (affirming an ALJ's decision not to obtain

9

an updated medical opinion after the ALJ explicitly stated that in his opinion, the criteria set forth in SSR 96-6p did not apply).  As discussed above, "an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Prentice, 1998 WL 166849, at *3.  Here, the ALJ failed to explain why he did not seek an updated medical opinion and this Court may not attempt to supply reasons to justify the ALJ's determination.  See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). Therefore, it is recommended that the case be remanded as well on this ground.

### 3. Functional Equivalence

An impairment is functionally equivalent if the impairment is of listing-level severity; "it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain. . . ."  20 C.F.R. § 416.926a (2001).  A marked limitation occurs "when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. . . .  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two but less than three, standard deviations below the mean."  Id. at § 416.926a(e)(2).  An extreme limitation occurs "when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. . . .  It is the equivalent we would expect to find on standardized testing with scores that are at least three standard deviations below the mean."  Id. at § 416.926a(3). The domains used to determine functional equivalence are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for one's self; and (6) health and physical

well-being.[5]  Id. at § 416.926a(b)(1).

### a. Attending and Completing Tasks

Eaton contends that because of her ADHD, she has marked limitation in attending and completing tasks.  The ALJ concluded that Eaton has a marked limitation in this area, finding that Eaton has extreme difficulty attending, is very impulsive, and has a poor ability to concentrate on large amounts of information.  T. 16.  Accordingly, there is substantial evidence in the record to support the ALJ's conclusion that Eaton has marked limitation in attending and completing tasks.

### b. Acquiring and Using Information

Plaintiff contends that Eaton had marked limitations in acquiring and using information because she was diagnosed with a learning disorder not otherwise specified as well as having difficulty learning and concentrating in school.  The ALJ concluded that Eaton had less than marked limitations in this area.

Since beginning school, Eaton has been consistently placed in special education classes.  Eaton has also participated in counseling, speech therapy, physical therapy, and occupational therapy.  Eaton's last IQ test indicated a verbal score of 80, a performance score of 91, and an overall score of 84.  T. 245.  These scores fall within the low-to-low average range.  In May 2000, Linda McCully, Eaton's special education teacher, stated that

---

[5] Plaintiff does not contend that Eaton has a marked or extreme limitation in her health and physical well-being or caring for herself.  Pl. Mem. of Law (Docket No. 7) at 19-25.

11

Eaton was "an extremely challenging child to teach" and required "much 1:1 instruction to learn." T. 210. She also indicated that Eaton has a short attention span, is easily distracted, and requires frequent redirection to stay on task. T. 146. However, Ms. McCully only found Eaton to have moderate loss in acquiring and using information. Id. Further, Eaton was enrolled in regular classes for science, social studies, art, music, and physical education without additional adult support. T. 250. She only required special education classes for reading, language, and math. Id. From the record, it does not appear that Eaton had a marked or extreme limitation in acquiring and using information and, thus, the ALJ's conclusion is supported by substantial evidence.

### c. Interacting and Relating with Others

Plaintiff contends that Eaton had marked limitations in interacting and relating with others as indicated by her Oppositional Defiant Disorder ("ODD") diagnoses. The ALJ concluded that Eaton had no limitation in interacting and relating with others.

In May 2000, Dr. Barry diagnosed Eaton with ODD. T. 333. The ALJ found that Eaton's ODD was severe within the meaning of the Regulations, concluding that this impairment caused Eaton "to have limitations in age-appropriate activities." T. 14, 144-45. Eaton was described as "very immature" and often unaware of the effect of her inappropriate behavior on others. T. 353. Ms. McCully, Eaton's special education teacher, stated that Eaton "tends to be bossy when playing with peers" and is disruptive in class. T. 134. However, Ms. McCully also indicated that Eaton had mild-to-no loss in developing lasting friendships with peers and only a moderate loss in her ability to work in groups, share stories, and tolerate differences among peers. T. 144-45. Further, Eaton's June 2001 individualized education

12

program from Cayuga Elementary indicates that she is social with her peers and "developed several friendships with girls in the classroom." T. 251-52. Although the record appears to indicate that Eaton has some limitations in interacting and relating with others, there is substantial evidence to support the ALJ's conclusion that Eaton's limitations are not marked or extreme.

### d. Moving About and Manipulating Objects

Plaintiff contends that Eaton had marked limitations in moving about and manipulating objects because she had poor motor skills. The ALJ concluded that Eaton's limitations were less than marked.

Eaton's motor proficiency scores were consistently behind for her age. Eaton had difficulty with balance, coordination, and motor planning. T. 322-23. Eaton was described as having awkward manual dexterity and had difficulty in properly holding a pen. T. 130, 328. However, a March 2001 physical indicated that Eaton had only a moderate delay in gross motor behavior. T. 252. Eaton also testified that she played softball, was able to ride a two-wheel bicycle, could tie her own shoes. T. 35, 38. Further, a pediatric examination from Dr. Ganesh indicated that Eaton could handle large and small objects in an age-appropriate manner and was able to jump and hop on one foot. T. 328. From the record, it does not appear that Eaton had marked or extreme limitations in moving about and manipulating objects and, thus, the ALJ's conclusion is supported by substantial evidence.

### B. Remand or Reversal

A reviewing court has authority to reverse with or without remand. 42 U.S.C. §§ 405(g), 1383(c)(3) (1999). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). Reversal is appropriate, however, where there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. Id.; see also Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Given the uncertain state of the record with regard to Eaton's ADHD and the ALJ's failure to explain his reasoning for not seeking an updated medical opinion, it cannot be said that "persuasive proof of disability" exists to warrant an award of damages without further review by the Commissioner. Accordingly, remand pursuant to sentence four of § 405(g) and not reversal is warranted.

### VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **REMANDED** pursuant to sentence four; and

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATE:  July 27, 2006
       Albany, New York

_____
United States Magistrate Judge